IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHANTA M. HUNTLEY, as Personal Representative of the Estate of RUFUS ALTON HUNTLEY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:18-CV-744 |
| SHERIFF JEFF CRISCO, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In 2016, Rufus Huntley, died while detained in custody awaiting trial after failing to appear in court on a misdemeanor charge. His estate has sued the Sheriff of Stanly County and others over the lack of medical care he received while incarcerated in the county jail. Three of the defendants, Cristy Campbell, Karen Russell, and Southern Health Partners, Inc., have moved to exclude the expert testimony of David Mathis, M.D., and Jose Plaza, M.D., contending these doctors are not familiar with the applicable standard of care relevant to the plaintiff's state law claims.

Dr. Mathis is qualified to testify and has demonstrated familiarity with the Stanly County Detention Center and the motion to exclude his testimony is denied. The motion is also denied to the extent it is directed towards Dr. Plaza's testimony on causation as he is qualified to testify on medical causation, but it is granted to the extent Dr. Plaza may be asked to testify on the applicable standard of care.

## Background

The claims in this case stem from the medical treatment of Rufus Huntley while he was incarcerated at the Stanly County Detention Center[1] leading up to his death on September 12, 2016. *See* Doc. 15. Mr. Huntley was booked into the jail on August 19, 2016, on pending charges. Doc. 67-1 at 5.

During the time Mr. Huntley was in the jail, Stanly County had contracted with Southern Health to provide medical care to inmates. Doc. 75-2 at 18. Nurse Campbell was employed by Southern Health as a licensed practical nurse and as the medical services coordinator for the jail. Doc. 75-8 at 18, 23, 28. Ms. Russell was a physician's assistant who had a contract with Southern Health to oversee nurses who provided medical care at several correctional facilities, including the Stanly County Detention Center. Doc. 75-3; 75-4 at 13 [43:18–44:14].[2] Both were responsible for providing care to Mr. Huntley. *See* Doc. 75-2; Doc. 75-3.

According to Southern Health's policy, a Southern Health employee was required to perform a health assessment on all newly admitted inmates within 14 days of admission. Doc. 76-5 at 6. All parties agree this policy was in place when Mr. Huntley was incarcerated and that it was a mandatory policy. *Id.* at 10; *e.g.,* Doc. 75-8 at 63–64.

---

[1] The parties interchangeably refer to the jail as the "Stanly County Detention Center" and the "Stanly County Jail." To save trees, time, and for clarity, the Court will usually refer to the Stanly County Detention Center as "the jail" throughout this opinion, unless it is necessary to distinguish it from jails in other places.

[2] For clarity, citations to condensed depositions will cite the page number appended by the CM-ECF system followed by the internal deposition transcript page number in brackets.

At no point during his incarceration did anyone give Mr. Huntley the required health assessment, even though he was showing clear signs of illness which progressively worsened. *See, e.g.,* Doc. 67-1. On September 11, 2016, he was rushed to an emergency hospital, *id.* at 11, where it was discovered that he had a perforated ulcer that had become septic. *See* Doc. 65-3; Doc. 67-2; Doc. 67-3 at 3. Medical staff unsuccessfully attempted to stabilize Mr. Huntley, but he went into cardiac arrest and he had to be resuscitated. Doc. 67-3 at 16. He survived emergency surgery to repair his perforated ulcer, but he died the following day. *Id.* at 16, 19–20.

The plaintiff, Shanta Huntley, is the administratrix of Mr. Huntley's estate. On its behalf she has brought multiple claims under 42 U.S.C. § 1983 for failure to provide medical care, failure to train and supervise, and failure to provide adequate staffing and resources, as well as North Carolina state law claims for wrongful death and medical malpractice in violation of N.C. Gen. Stat. § 90-21.12, and a claim for punitive damages. Doc. 15 at ¶¶ at 57, 66–106.

Ms. Huntley has identified Dr. David Mathis and Dr. Jose Plaza as expert witnesses who will testify at trial. In connection with pending summary judgment motions, the moving defendants, Nurse Campbell, Ms. Russell, and Southern Health, contend that testimony by Dr. Mathis and Dr. Plaza should be stricken because they are unfamiliar with the standard of care applicable to the defendants.

A. **Expert Reports of Dr. Mathis**

Dr. Mathis is a physician and surgeon who works for the California Department of Corrections & Rehabilitation at the California Medical Facility ("CMF"). Doc. 65-2 at 6.

3

Dr. Mathis has over 20 years of experience working in correctional facilities as a medical provider and medical director. *Id.* at 4. He has held medical positions at correctional facilities in Virginia, Maryland, and California, and he is certified as a Correctional Healthcare Professional by the National Commission for Correctional Health Care ("NCCHC"). *Id.* at 4–5. Dr. Mathis has prepared at least one correctional hospital for accreditation by the American Correctional Association ("ACA") while he served as medical director. *Id.* at 5.

In his current capacity as a physician and surgeon for CMF, Dr. Mathis screens, examines, admits, and treats incoming inmates; coordinates bed utilization for inmates; conducts a mental health clinic four days a week for roughly 40 inmates; is the primary care physician for roughly 500 of the inmates in the general prison population; and fulfills other similar responsibilities. *See id.* at 6–8.

In his expert reports, Dr. Mathis offers his opinions that:

- the jail, Southern Health, and Nurse Campbell violated the standard of care when they did not perform a health assessment on Mr. Huntley within 14 days of his arrival at the jail;

- the jail, Southern Health, Nurse Campbell, and Ms. Russell violated the standard of care when Mr. Huntley was not evaluated on September 6, 2016, when he displayed incontinence and unusual behavior; and

- had the defendants complied with the standard of care, Mr. Huntley would have received timely, competent medical care, including end of life comfort care.

4

Doc. 65-2 at 16–21.[3]

In arriving at these opinions, Dr. Mathis relied on Mr. Huntley's medical records, Stanly County Sheriff's Office's records and reports on Mr. Huntley, the Stanly County Detention Center's policies, Southern Health's policies, the pleadings and discovery in this case, and other general resources on correctional facility policies and procedures. *Id.* at 8–10. Dr. Mathis also relied on the standards of health care for medical providers in correctional situations promulgated by NCCHC and the ACA. *See id.*

### B. Expert Report of Dr. Plaza

Dr. Plaza is a board-certified emergency medicine physician at Plaza Medical Services, PC, in North Carolina; he works in hospital-based emergency departments. Doc. 65-3 at 4–5. Dr. Plaza has nearly thirty years of experience in the field of emergency medicine and handles between 28,000 to 70,000 patient visits a year. *Id.*

In his expert report, Dr. Plaza offers his professional opinions that:

- Mr. Huntley had an intestinal ulceration that put him at high risk for developing sepsis;

- the gastric ulcer perforated, which led to purulent serositis, which progressed to sepsis, then septic shock, and finally organ failure and death; and

- Mr. Huntley's death was "directly associated with the events that took place at" the jail.

---

[3] Dr. Mathis's first expert report contained slightly different opinions. *See* Doc. 65-1 at 11–13. In his second report, he states that his second report supersedes his first report. Doc. 65-2 at 4. Therefore, the Court has not considered the opinions in Dr. Mathis's first expert report.

Doc. 65-3 at 1–3.  In forming these opinions, Dr. Plaza relied upon Mr. Huntley's medical records, autopsy report, records from the Stanly County Sheriff's Department, and "prisoner statements."  *Id.* at 1.

## Legal Standard

Although the Court follows federal law for the procedural aspects of the case, North Carolina law governs the substantive aspects of the state law claims, *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), which are the only claims implicated by the present motion.  "In a medical malpractice action under North Carolina law, the plaintiff must show: (1) the applicable standard of care under N.C. Gen. Stat. § 90–21.12; (2) a breach of the standard of care; (3) proximate causation; and (4) damages."  *Burk v. United States*, No. 5:10-CV-470-H, 2012 WL 1185011, at *2 (E.D.N.C. Apr. 9, 2012) (citing *Weatherford v. Glassman,* 129 N.C. App. 618, 621–22 (1989)).  The parties "must establish the relevant standard of care through expert testimony."  *Id.* (quoting *Smith v. Whitmer,* 159 N.C. App. 192, 195 (2003)).

An expert proffered to testify on the applicable standard of care under N.C. Gen. Stat. § 90-21.12 must qualify as an expert under North Carolina Rule of Evidence 702.  *See Wood v. United States*, 209 F. Supp. 3d 835, 842 (M.D.N.C. 2016) (noting that claims raising a North Carolina medical malpractice claim must comply with N.C.R. Civ. P. 9(j), which in turn requires an expert to qualify under N.C.R. Evid. 702; *see also Littlepaige v. United States*, 528 F. App'x 289, 292 (4th Cir. 2013); *Frazier v. Angel Med. Ctr.*, 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); N.C.R. Civ. P. 9(j).  Among other things and as is relevant here, Rule 702(d) states that a physician who qualifies as a

6

medical expert witness under Rule 702(a), and "who by reason of active clinical practice . . . has knowledge of the applicable standard of care for nurses . . . or other medical support staff may give expert testimony in a medical malpractice action with respect to the standard of care of which he is knowledgeable" as it applies to nurses or other medical support staff. N.C. Gen. Stat. § 8C-1, Rule 702(d).

## Analysis

### A. Testimony of Dr. Mathis

In order to testify in a medical malpractice case as to the standard of care, an expert witness must apply "the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." *Grantham ex rel. Tr. Co. of Sterne, Agee & Leach v. Crawford*, 204 N.C. App. 115, 118, 693 S.E.2d 245, 248 (2010) (quoting N.C. Gen. Stat. § 90.21-12 (2007)). Southern Health, Ms. Russell, and Nurse Campbell contend that Dr. Mathis is not qualified to testify to the applicable standard of care because he applied the wrong standard of care, he lacks the relevant work experience, and he is unfamiliar with the medical community in Stanly County. *E.g.,* Doc. 65 at 10–12.

To the extent the defendants contend Dr. Mathis cannot testify to the standard of care because he has applied the wrong standard of care, that argument is circular and without merit. It is not unusual for witnesses to disagree about the appropriate standard of care, and the fact that the defendants disagree with Dr. Mathis's testimony does not

7

make it inadmissible. In any event, there is ample evidence to support the plaintiff's contention that Dr. Mathis applied the appropriate standard of care.

The defendants' other arguments are related and arise out of the North Carolina requirement that experts testifying about the standard of care in medical malpractice cases generally must demonstrate familiarity with the standard of care in that community or a similar community.[4] *See Billings v. Rosenstein*, 174 N.C. App. 191, 194, 619 S.E.2d 922, 924–25 (2005). There is no particular method by which a medical expert must become familiar with a given community. *Grantham*, 204 N.C. App. at 119, 693 S.E.2d at 248 (noting that book and internet research "may be perfectly acceptable" (quoting *Crocker v. Roethling*, 363 N.C. 140, 151, 675 S.E. 2d 625, 633 (2009) (Martin, J., concurring)). An expert is not required "to have actually practiced in the community in which the alleged malpractice occurred, or even to have practiced in a similar community." *Id.* And "where the standard of care is the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community." *Haney v. Alexander*, 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984).[5]

Dr. Mathis has extensive experience working in correctional medicine. *See* Doc. 65-2 at 23. While his experience has principally been in larger correctional facilities, it is

---

[4] The defendants do not otherwise challenge Dr. Mathis's qualifications to testify as an expert under Federal Rule of Evidence 702 or North Carolina Rule of Evidence 702(b).

[5] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

in the same field of correctional medicine as is at issue here.  He has extensive familiarity with the NCCHC and ACA standards of care.  *See id.* at 4–5; Doc. 75-9 at 46.  He also has experience supervising physician's assistants, Doc. 75-9 at 52–53, and has worked closely with licensed practical nurses in correctional settings since at least 2010.  *Id.* at 42; Doc. 65-2 at 7, 23.[6]

Dr. Mathis testified that in order to become familiar with the community, he consulted the Stanly County Sheriff's policy manual, the North Carolina Jail Administrators' Guide for New Jail Administrators, the relevant provisions of the North Carolina Administrative Code governing medical policies in correctional facilities, and limited written discovery from the defendants, *see* Doc. 65-2 at 8–10; *see also* Doc. 75-9 at 24–25, and that many of these materials referenced the NCCHC and ACA standards of care.  *See, e.g.,* Doc. 75-9 at 51, 54–55, 58, 90.  His experience coupled with his review of these materials make Dr. Mathis sufficiently familiar to testify as to the applicable standard of care.

The motion to strike the expert testimony of Dr. Mathis will be denied.

### B. Testimony of Dr. Plaza

Dr. Plaza offers his expert opinion on the progression of Mr. Huntley's medical conditions and, ultimately, the cause of his death.  *See* Doc. 65-3; Doc. 74 at 20.  The defendants contend that Dr. Plaza's testimony should be excluded because he is not

---

[6] *See Katy v. Capriola*, 226 N.C. App. 470, 474, 742 S.E.2d 247, 251 (2013) ("[A] physician may testify regarding the applicable standard of care for a physician assistant [or nurse] if the physician is familiar with the experience and training of the defendant and . . . the physician is familiar with the standard of care in the defendant's community . . . .").

9

qualified to offer testimony as to the applicable standard of care as defined by N.C. Gen. Stat. § 90-21.12. Doc. 65 at 12–13. But it does not seem that his testimony relates to the standard of care, and indeed the plaintiff has represented that she is not offering Dr. Plaza as a standard of care expert. Doc. 74 at 20. Therefore, to the extent Dr. Plaza is offering testimony on the standard of care applicable to the defendants, the defendants' motion, Doc. 64, is granted.

The defendants did not move to exclude Dr. Plaza's testimony on causation. To the extent the defendants raise a challenge to Dr. Plaza's causation testimony in their reply brief, *see* Doc. 86 at 5–7, the motion is denied. The defendants did not raise this issue in their brief in support, and a reply brief is not an appropriate place to raise an entirely new argument. *See United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013).

### C. Motion to Strike Reply Brief

As a final matter, the plaintiff asks the Court to strike the defendants' reply brief to the motion to strike expert testimony and the accompanying affidavit of Jennifer Hairsine. Docs. 86, 91. Because the Court denies the motion to exclude even after considering the reply brief and because the affidavit of Ms. Hairsine appears to have been appropriately submitted in connection with a separate motion, *see* Doc. 89-1; *McGinnis v. Se. Anesthesia Assocs, P.A.*, 161 F.R.D. 41, 42 (W.D.N.C. 1995) ("[B]ecause the contested affidavits . . . support the reply, Rule 6[(c)(2)] does not prohibit them from being filed subsequent to the motion as reply affidavits."), the motion to strike is denied.

## CONCLUSION

Dr. Mathis has over 20 years of experience in correctional medicine, including supervising nurses and physician's assistants, and he is qualified to testify concerning NCCHC standards. He has reviewed materials specific to Stanly County, and he is qualified to offer opinions on the standard of care. Dr. Plaza is qualified to testify about medical causation, and the motion to strike his testimony is denied to the extent it seeks to exclude his testimony on this subject.

It is **ORDERED** that**:**

1. The motion to strike the expert testimony of Dr. Mathis, Doc. 64, is **DENIED**;

2. The motion to strike the expert testimony of Dr. Plaza, Doc. 64, is **GRANTED** to the extent he may be asked to testify about the standard of care applicable to the defendants and **DENIED** to the extent the defendants challenge the admissibility of his testimony on medical causation;

3. The motion to strike the defendants' reply brief, Doc. 90, is **DENIED**.

This the 21st day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE